IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID AMEZCUA,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY OF FRESNO, FRESNO POLICE DEPARTMENT, FRESNO POLICE OFFICER BRYAN WILLIAMS, individually and in his official capacity, and DOES 1through 100, inclusive,<br><br>          Defendants | CV F 07-1268 AWI SMS<br><br>MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION<br><br>Doc. # 11 |

   This is an action for compensatory and punitive damages by plaintiff David Amezcua ("Plaintiff") against City of Fresno and Fresno Police Department ("Fresno") and Fresno Police Officer Bryan Williams ("Williams") (collectively, "Defendants"). In the instant motion, Defendants move for summary judgment or, in the alternative summary adjudication. For the reasons that follow, the court will deny the motion for summary judgment as to Williams and will grant the motion for summary judgment as to the entity defendants City of Fresno and Fresno Police Department.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

   This case was removed to this court from the Fresno County Superior Court on August

31, 2007. The complaint alleges a single claim for relief pursuant to 42 U.S.C. § 1983. The complaint arises from an arrest that occurred on February 5, 2005, at Selland Arena in Fresno. The complaint alleges Plaintiff was leaving a concert with his wife and an associate and his wife. As they were exiting the arena, Plaintiff was heard by Williams to make a sound that resembled a "bark." Williams, a uniformed police officer on duty at the concert, interpreted the "bark" as possibly a gang-related signal; one that is understood by law enforcement to be used by members of the Hispanic Fresno Bulldogs gang. Williams stopped Plaintiff for questioning. The complaint alleges Plaintiff stated that he was not a gang member. The complaint alleges that Williams told Plaintiff that Plaintiff was being arrested for public intoxication and applied handcuffs extremely tight so that they cut into Plaintiff's wrists.

The complaint alleges the arrest was without probable cause in violation of Plaintiff's Fourth Amendment Rights. The complaint also alleges the elements of entity liability against County of Fresno and against Fresno Police Department, but alleges no facts pertaining to the role of either public entity in Plaintiff's arrest.

The instant motion for summary judgment was filed on October 21, 2008. Plaintiff filed a response to Defendants' alleged undisputed material facts, and submitted a number of declarations in support of Plaintiff's separate list of disputed material facts. The court's docket record does not, however, reflect the filing of any memorandum of points and authorities by Plaintiff is support of his opposition to Defendants' motion for summary judgment. Defendants filed a reply memorandum on November 11, 2008, wherein they note the absence of any memorandum of points and authorities having been filed by Plaintiff in opposition.

**UNDISPUTED MATERIAL FACTS**

The following facts are undisputed unless otherwise noted. On February 5, 2005, Williams and a partner from the Fresno Police Department were working with several other officers monitoring a concert at Selland Arena in Fresno. The officers were aware that local gang members were in attendance at the concert. Williams was familiar with the notorious Hispanic

Bulldog gang in Fresno, which often expressed themselves by barking or making other dog-like sounds.

Plaintiff consumed a beer prior to attending the concert at Selland Arena. He consumed a second beer while at the concert with his wife and another couple. As Plaintiff was leaving the concert, Plaintiff drank some of the remainder of his wife's beer.

Defendants allege that, as Plaintiff was exiting the concert, he made a "growling 'ruff'" sound to his wife, which he admitted could have sounded like a dog. Plaintiff disputes this fact. Plaintiff submits the declaration of his wife which states that Plaintiff made an affectionate sound like a "tiger growl," which she alleges cause Williams to approach Plaintiff and thereafter arrest him for public intoxication. Defendants allege Williams and Officer Campos, an unnamed police officer who was with Williams, approached Plaintiff after they heard the alleged "growling ruff" sound, because they were concerned that Plaintiff might be a Bulldog gang member trying to incite other gang members present.

Defendants allege that, when Williams got close to Plaintiff, he detected a strong odor of alcohol or beer on Plaintiff's breath. Plaintiff disputes this fact by alleging that he was not intoxicated at the time and that he requested a breath alcohol test, but the test was refused. The parties agree that about this time, Plaintiff commence a long and loud diatribe of "obscenities, threats and racially offensive insults at [. . .] Williams." Defendants' UMF # 10. The parties dispute when the diatribe occurred. Plaintiff alleges the diatribe occurred after he was placed under arrest, Defendants' alleged it was before the arrest.

There is no dispute that Plaintiff identified himself to Williams as a Fresno County Probation officer, but refused to provide identifying information necessary for booking.

Plaintiff points out in his proffered list of disputed material facts that he was not charged with any criminal offense related to the incident in question. He does not directly deny that his breath smelled of alcohol, but he denies that he was intoxicated to the point of being unable to care for his "own safety and the safety of others." Doc. # 17 at ¶ 14. He alleges he was not given

the opportunity to take a breath test, and that there was no probable cause for his arrest on the charge of public intoxication. Plaintiff also alleges it is the policy of Fresno Police Department to not give field sobriety tests to persons suspected of intoxication "to confirm whether and individual is intoxicated to the point where they cannot care for themselves prior to their arrest for a violation of [California] Penal Code section 647(f)." Doc. # 17 at ¶17.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion

4

at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

5

any. Rule 56(c); <u>Poller</u>, 368 U.S. at 468; <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(per curiam); <u>Abramson v. University of Hawaii</u>, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

"To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right. [Citation.]" <u>Wood v. Ostrander</u>, 587 (9th Cir. 1989). There is no dispute that Williams was acting under color of state law. The issue in this case is whether there was a depravation of a federal constitutional or statutory right. The constitutional harm alleged in this case is that Plaintiff was arrested without probable cause in violation of his rights under the Fourth Amendment.

Defendants assert two bases for summary judgment. First they contend that probable cause existed for Plaintiff's arrest and that there was consequently no Fourth Amendment violation. Second, Defendants argue that, even if there was a fourth amendment violation, Williams is nonetheless entitled to qualified immunity.

> The determination of whether a law enforcement officer is entitled to qualified immunity involves a two-step analysis. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). In the first step we must view the record in the light most favorable to the party asserting injury in determining whether the officer's conduct violated a constitutional right. <u>Id.</u> If the plaintiff establishes the violation of a constitutional right, we must next consider whether that right was clearly established at the time the alleged violation occurred. <u>Id.</u>

<u>Moreno v. Baca</u>, 431 F.3d 633, 638 (9th cir. 2005). Thus, the determination of qualified

6

immunity necessarily incorporates the consideration of Defendants' first argument for summary judgment; that is, that no Fourth Amendment violation occurred. The court will therefore address both Defendants' arguments by addressing both prongs of the qualified immunity analysis in turn.

**I. Fourth Amendment Violation**

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." Beck v. Ohio, 379 U.S. 89, 96 (1964) (citing Carroll v. United States, 267 U.S. 132, 162 (1925). As the Ninth Circuit has stated the standard:

> "The test for whether probable cause exists is whether 'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [plaintiff] had committed or was committing an offense.'"

Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th cir. 2007). An arrest that is without probable cause under the facts known to the officers at the moment of the arrest cannot be made lawful on the basis of facts that became known after the arrest. Moreno, 431 F.3d at 639.

Three pertinent facts are undisputed in this case, and one fact is in dispute. It is undisputed that Plaintiff's breath smelled of beer; it is undisputed that, as Plaintiff and his friends approached Williams, Plaintiff made a sound that could reasonably been perceived as a dog "ruff" or bark; and it is undisputed that members of the Bulldog gang may identify themselves with such sounds. What is in dispute is whether the diatribe of invectives and threats Plaintiff launched into were delivered before or after the arrest.

For purposes of probable cause analysis, it is not necessary that a plaintiff is charged for the same offense he was arrested for so long as the crime charged "involves the same conduct for which the [plaintiff] was arrested." Blankenhorn, 485 F.3d at 473. However, Defendants as the moving party in this motion have the burden to show that Plaintiff's actions prior to his arrest

would warrant a prudent person to believe that Plaintiff had committed or was committing a crime. That showing must be made in reference to some particular crime. While Defendants have opined that Plaintiff was treated with lenience because he was charged with a lesser offense than might have been justified, the fact is Defendants' argument for probable cause is made in reference to his arrest for being intoxicated in public in violation of California Penal Code, section 647(f).[1] As a consequence, the court is confined to the analysis of whether the facts that are both undisputed and that were known to Williams prior to Plaintiff's arrest are sufficient to constitute probable cause for an arrest for violation of that crime. The court must conclude they are not.

The only fact that is both undisputed and known to Williams prior to the arrest that bears directly on whether Plaintiff was intoxicated in public in violation of section 647(f) is the fact that his breath smelled like beer. There is no allegation that Plaintiff's eyes were bloodshot, that he speech was slurred, or that any other indicia of intoxication were present. Given that Plaintiff had just come from an event where beer was on sale, there is not much significance in the bare fact that he breath smelled of beer. While it is undisputed that Plaintiff made a "ruff"- type of sound and that such dog-like sounds are associated commonly with the Bulldog gang, the fact that Plaintiff may have made such a sound does not have any bearing on whether Plaintiff was intoxicated in public. Defendants allege in their eighth proffered undisputed material fact that Williams initially approached Plaintiff because Williams was concerned that Plaintiff was attempting to incite gang violence. Plaintiff, however, was not charged with incitement, nor do Defendants present an argument that Plaintiff's actions could have supported probable cause for an arrest on a charge of incitement.

While it is true that Plaintiff's diatribe would constitute a fact probably sufficient to allow a prudent person to believe Plaintiff was intoxicated in public, and certainly sufficient to constitute probable cause for other related charges, there is a dispute as to whether that diatribe

---

[1] Hereinafter, "section 647(f).

preceded or followed the arrest. Contrary to Defendants' contention, this disputed fact has a central place in the analysis of whether there was probable cause for Plaintiff's arrest. As previously discussed, probable cause for Plaintiff's arrest cannot be based on his diatribe if that diatribe was delivered after the arrest. Because there is an issue of material fact as to when Plaintiff's outburst occurred, the court cannot find as a matter of law that it supports probable cause for Plaintiff's arrest.

The court can find no case, nor do Defendants cite any case, where the observation of beer on the breath is sufficient, without more, to constitute probable cause for an arrest for violation of section 647(f). The court must conclude that Defendants have not carried their burden to show the absence of any material fact as to whether probable cause existed at the time of Plaintiff's arrest.

**II.  Clearly Established Right**

Although the court has found probable cause was lacking for Plaintiff's arrest for public intoxication in violation of section 647(f), Williams may nonetheless be entitled to qualified immunity under the second prong of the Saucier analysis if Defendants can show that the right violated was not clearly established at the time.

> "Even absent probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of clearly established law and the information the [arresting] officers possessed." [. . . .] "Whether a right is 'clearly established' for purposes of qualified immunity is an inquiry that 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' In other words, [t]he contours of the right must be sufficiently clear that what that a reasonable officer would understand that what he was doing violates that right.'"

Blankenhorn, 485 F.3d at 476 (quoting Graves v. City of Coeur d'Alene, 339 F.3d 828, 846 (9th Cir. 2003) (internal citations omitted)).

As with the court's analysis of the existence of probable cause, the court is constrained here by the limited set of facts that are both not disputed and that were known to the officers prior to, or at the time of, the arrest. Given the limited factual context previously discussed, the court must ask if a reasonable officer would have believed, in light of clearly established law and

9

in light of the facts known to him, that the arrest of a person whose only outward manifestation of insobriety was the odor of beer on his breath and whose only outward vocal expression was a dog-like noise was lawful.

As previously noted, the court has been unable to find any case where probable cause was found for the arrest on a charge of violation of section 647(f) where the only trait manifested by the arrestee was the odor of beer on the breath. In every case the court has been able to find where probable cause has been upheld, one of two conditions are met. Either there is an allegation of some other indication of insobriety such as bloodshot eyes, slurred speech, or unsteady gait, or the arrestee is noted to have alcohol on the breath *and* is about to engage in an activity, such as driving a car, that is likely to endanger himself of others. Given the lack of any case authority indicating that the odor of beer on the breath constitutes probable cause for arrest on a charge of drunk in public, there is no basis upon which the court could hold that a reasonable officer could hold such a belief.

It is obvious that the factual context the court must use in analyzing the issues of probable cause and the existence of a clearly established right is likely to be different than the factual context that existed at the time of the arrest or that may be adduced at trial. Reading between the lines only a little, the court can see a situation where the officers, charged with maintaining order in a public event known to be attended by gang members, became apprehensive when they heard Plaintiff make a sound that raised concerns that Plaintiff might be trying to incite gang-related conflict. In that context, the narrative describing Plaintiff's arrest has more to do with preventing incitement and maintaining order in a potentially volatile setting than it has to do with controlling public drunkenness. Unfortunately for Defendants' motion for summary judgment, the facts that could definitively support Defendants' claim that probable cause existed to justify Plaintiff's arrest under section 647(f) are disputed and Defendants have not made a sufficient argument that probable cause existed for Plaintiff's arrest under any related statute. The court must therefore deny Defendants' motion for summary judgment as to Plaintiff's claim against Williams.

## III. Entity Liability

Under Section 1983, a public entity cannot be subjected to vicarious liability or be sued on a theory of respondeat superior for the acts of its employees. Monell v. Dep't of Soc. Services, 436 U.S. 658, 91 (1978). Where, as here, the alleged wrong was the result of actions by a person without policy making authority, the governmental entity is not liable unless the plaintiff can show "(1) that plaintiff was deprived of a constitutional right; (2) that the municipality had a policy; (3) that this policy amounted to deliberate indifference of plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation." Sepatis v. City and County of San Francisco, 217 F.Supp.2d 992, 1005 (N.D. Cal. 2002) (citing Plumeau v. Sch. Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

While Plaintiff has alleged facts sufficient to prevent summary judgment as to his claim against Williams, the same cannot be said regarding his claim against entity defendants City of Fresno and Fresno Police Department. The extent of Plaintiff's allegations regarding the entity defendants is that Fresno Police Department has a policy of not administering a breath test or "field sobriety test" prior to making an arrest for violation of section 647(f). What is lacking is any argument to support the proposition that such policy constitutes indifference to Plaintiff's constitutional rights. Unlike statutes that make it an offense to have a certain amount of alcohol in the blood while driving, the statute prohibiting public intoxication references the ability of a person to care for themselves or others, not to any particular amount of alcohol in the blood. A breath test is not sufficient by itself to prove either violation or non-violation of the statute, except possibly in situations where no alcohol is detected – a situation that admittedly would not be the case here. Likewise, a field sobriety test, while perhaps indicative of a level of impairment that would be relevant in the context of a charge of driving while intoxicated, is not necessarily indicative of the level of impairment that would justify arrest for violation of section 647(f). Plaintiff fails to demonstrate any connection between the alleged infringement of his Fourth Amendment Rights and the policy of the Fresno Police Department to not administer alcohol

breath tests to non-drivers. Consequently, summary judgment is warranted as to his <u>Monell</u> claim against entity defendants City of Fresno and Fresno Police Department.

THEREFORE, in accord with the foregoing discussion, it is hereby ORDERED that Defendants' motion for summary judgment as to Plaintiff's claims against defendant Williams is DENIED. Defendants' motion for summary judgment as to entity defendants City of Fresno and Fresno Police Department is hereby GRANTED.

IT IS SO ORDERED.

**Dated:    December 19, 2008**              /s/ Anthony W. Ishii
                                       CHIEF UNITED STATES DISTRICT JUDGE

12